UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID H. CARR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:13-cv-1298-JMS-TAB |
| | ) |
| DR. JACQUES LECLERC, et al., | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment**

**P**laintiff David Carr ("Mr. Carr"), an Indiana prisoner incarcerated at the Indiana State Prison, brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants were deliberately indifferent to his serious medical need for treatment of a throat and ear infection and the pain associated with them and fro treatment of pain caused by kidney stones in violation of his Eighth Amendment rights. Defendants Dr. Jacques Leclerc, Dr. Mitcheff, Kim Hobson and Lesa Wolfe move for summary judgment. The plaintiff filed a response in opposition on May 11, 2015.

**I.  Summary Judge Standard**

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256 (7th Cir. 2011). To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v.*

*Preferred Technical Grp.,* 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the Court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

## II.  Statement of Material Facts Not in Dispute

The Court finds the following facts to either be undisputed, or found in the light most favorable to Mr. Carr.

At all times relevant to the allegations in his complaint, Mr. Carr was in an inmate in the custody of the Indiana Department of Correction and was housed at the Wabash Valley Correctional Facility.

### Ear Pain

At all times relevant to the allegation in his complaint, Dr. Leclerc was a Medical Doctor employed at the Wabash Valley Correctional Facility; Lesa Wolfe was a Licensed Practical Nurse and provided medical care to Mr. Carr while he was incarcerated at Wabash Valley; and, Kimberly Hobson was a Registered Nurse employed at the Wabash Valley Correctional Facility. [Filing No. 74-1; Filing No. 74-3; Filing No. 74-4].

Ms. Wolfe and Dr. Leclerc treated Mr. Carr multiple times in 2012 for complaints of respiratory problems and asthma. [Filing No. 74-3, at ECF pp. 2-3; Filing No. 74-1, at ECF pp. 2-4; Filing No. 74-2, at ECF pp. 54-64; Filing No. 74-2, at ECF pp. 70-72; Filing No. 74-2, at ECF p. 82]. Nurse Hobson treated Mr. Carr for a sore throat on April 3, 2012, and scheduled a throat culture. [Filing No. 83-5]. The throat culture was positive for streptococcus and methicillin

resistant staph aureus (MRSA). [Filing No. 83-4.] Mr. Carr was given a ten-day prescription for the antibiotic, Bactrim. [Filing No. 74-2, at ECF p. 7; Filing No. 74-2, at ECF pp. 75-77].

On April 14, 2012, Mr. Carr was treated for wax build up in his left ear and continued complaints of a sore throat. [Filing No. 83-6]. His left ear was irrigated and he was instructed to complete the antibiotics. On April 20, 2012, Mr. Carr was seen in the infirmary due to complaints of burning in his throat and chest. Medical staff examined him but did not find anything wrong. Nurse Hobson commented to Mr. Carr that his condition was not life threatening and he should quit signing up for sick calls. Nurse Hobson then refused to perform a throat culture on Mr. Carr. [Filing No. 87-1, at ECF p. 3].

On April 23, 2012, a second throat culture was performed that tested positive for MRSA. [Filing No. 83-7; Filing No. 74-2, at ECF p. 89]. On April 25, 2013, Dr. Leclerc saw Mr. Carr for complaints of a knot in his throat. Mr. Carr complained he was still experiencing pain when swallowing. Dr. Leclerc examined Mr. Carr's throat but did not see any redness, lesions, swelling or other cause for concern.

On April 29, 2012, Mr. Carr submitted a request for health care complaining of pain in his throat, drainage from his ears, and throbbing in his left ear. [Filing No. 83-13]. On April 30, 2012, Mr. Carr submitted a request for health care request complaining of pain in his throat and ears. [Filing No. 83-14].

Mr. Carr continued to complain of a sore throat, so Dr. Leclerc prescribed a 14-day course of the antibiotic, Augmentin on May 3, 2012. [Filing No. 74-2, at ECF p. 95]. A follow-up throat culture showed that the antibiotics successfully treated the MRSA. [Filing No. 74-2, at ECF p. 6].

Mr. Carr was seen in the clinic on May 6, 2012, for pain in his left ear. Mr. Carr was instructed to sign up for a clinic visit if his symptoms persisted. [Filing No. 74-1, at ECF p. 6; Filing No. 74-2, at ECF p. 96].

On May 8, 2012, Nurse Wolfe saw Mr. Carr for his annual health care screening. His vital signs, including oxygen saturation level was normal, and Mr. Carr showed no signs of distress. Any general health complaints Mr. Carr may have had would have been addressed in his health care request forms. [Filing No. 74-1, at ECF p. 6; Filing No. 74-2, at ECF pp. 98-99].

On May 10, 2012, Dr. Leclerc submitted a request for consultation with an Ear Nose and Throat (ENT) specialist based on Mr. Carr's reports of left ear pain with muffled hearing on May 8. [Filing No. 74-1, at ECF p. 7; Filing No. 74-2, at ECF pp. 101-103]. Dr. Leclerc performed an otoscope examination of Mr. Carr's left ear which reflected a bulging eardrum with loss of light reflex and moderate scarring. Mr. Carr's intake records show that he had surgery on his left eardrum in 1989 prior to incarceration which could have had an effect on the appearance of the eardrum such as scarring or thickening. Dr. Leclerc instructed Mr. Carr to sign up for sick call if the pain worsened. [Filing No. 87-1, at ECF p. 5]. Nurse Hobson told Mr. Carr not to sign up for any more sick calls because he would not be seen. [Filing No. 87-1, at ECF p. 5].

At all times relevant to Mr. Carr's complaint, Dr. Mitcheff was the Regional Medical Director for Corizon, the company that contracts with the Indiana Department of Correction to provide medical care to various prisons throughout Indiana. As Regional Medical Director for Corizon, Dr. Mitcheff did not make treatment decisions for inmates. Rather, he reviewed requests for medical services and consultations that could not be provided on-site at the correctional facility. Dr. Mitcheff reviewed such requests and the inmate's electronic medical records to provide a second opinion and recommendation as to whether the procedure or consultation was necessary.

Dr. Mitcheff only recommended a course of treatment. If a treating physician disagreed with Dr. Mitcheff's recommendations they were able to further discuss the issue and had the autonomy to proceed with any treatment they felt was medically required. The course of treatment for a particular offender is decided by the treating physician at the prison facility. [Filing No. 74-5].

On May 11, 2012, Dr. Mitcheff reviewed Dr. Leclerc's request for an ENT consultation and made the alternative treatment recommendation to treat Mr. Carr's suspected ear infection with antibiotics and a decongestant before considering an outside consultant for an off-site evaluation. [Filing No. 74-5, at ECF pp. 3-4; Filing No. 83-48] Mr. Carr was prescribed Sudafed and his antibiotic therapy was continued. [Filing No. 74-5, at ECF p. 4]. Although Dr. Leclerc had recommended a consultation with an ENT, he did not appeal Dr. Mitcheff's alternative treatment plan. [Filing No. 74-1, at ECF p. 7].

On May 22, 2012, Mr. Carr submitted a request for health care complaining of unbearable ear pain that was radiating to his jaw and temple. [Filing No. 83-16]. On May 24, 2012, Mr. Carr submitted a request for health care complaining that the Sudafed he was prescribed for ear pain was not working. Nurse Marla Gadberry responded that Mr. Carr was prescribed Sudafed and Augmentin to help open Eustachian tubes and to take all medication until gone. Dr. Leclerc had previously prescribed a 14 day course of Augmentin on May 3, 2012. [Filing No. 74-1].

On June 2, 2012, Mr. Carr was seen by Jane Crecelius, L.P.N. for complaints of bilateral ear pain. On June 7, 2012, Mr. Carr submitted a health care request form complaining of continued ear pain and headaches. [Filing No. 83-26]. On June 8, 2012, Dr. Leclerc prescribed Vicodin for three days to address Mr. Carr's complaints of ear pain. [Filing No. 74-1, at ECF p. 10]. On June 12, 2012, Mr. Carr submitted a health care request form complaining of severe pain in his ear radiating to his temple. [Filing No. 83-49]. Based on Mr. Carr's continued complaints of ear pain,

Dr. Leclerc submitted a second request for a consultation with an outside ENT to evaluate Mr. Carr's complaints of left ear pain and muffled hearing on June 13, 2012. [Filing No. 74-1, at ECF p. 10; Filing No. 83-24].

On June 15, 2012, Dr. Mitcheff entered an alternative treatment plan for Mr. Carr's ear problem suggesting a 30-day course of Flonase to relieve the suspected congestion in his left ear. [Filing No. 74-1, at ECF p. 11; Filing No. 74-1, at ECF pp. 83-29; Filing No. 83-30]. Again, Dr. Leclerc did not appeal the alternative treatment plan because he believed the treatment of Mr. Carr's ear pain was within the standard of care.

On July 10, 2012, Mr. Carr submitted a request for health care stating that he had been taking Flonase for an ear infection and headaches for over two weeks and that he still had pain in his ear and a headache. He also reported that he could not hear out of his left ear and that he was experiencing pain in his ear and head. [Filing No. 83-32].

On July 12, 2012, Mr. Carr submitted a request for health care form stating that he had been taking Flonase for thirty days, had burning in his nose, developed sores in his left nostril, and complained that his ear still hurts. [Filing No. 83-31]. The health care staff responded that Mr. Carr left the facility.

On July 13, 2012, Mr. Carr was transferred to the Indiana State Prison and Dr. Leclerc's treatment of him stopped. Nurse Hobson also did not provide any further treatment for Mr. Carr.

On August 2, 2012, Mr. Carr was seen by Diane Kominsky, A.P.N., at the Indiana State Prison. She submitted an ENT consultation request based on Mr. Carr's continued complaints of left ear pain with muffled hearing. She stated in the consultation request that Mr. Carr reported no relief from Sudafed or Flonase. [Filing No. 83-42]. Dr. Mitcheff reviewed the request for an ENT consultation and determined that Mr. Carr should be seen by an audiologist for a hearing test prior

to being seen by an ENT. On August 9, 2012, Nurse Kominsky prescribed the antibiotic Cipro to Mr. Carr for an ear infection.

Mr. Carr was evaluated by an audiologist on or about September 2, 2012, The audiologist determined that Mr. Carr had profound sensorineural hearing loss ("SNL") loss in his left ear and recommended Mr. Carr be evaluated by an ENT.

Ms. Kominsky's consultation request for an outside ENT specialist was approved and on September 12, 2012, Mr. Carr was seen by David Colgrove, an ENT specialist. Dr. Colgrove stated that his physical exam showed tympanosclerosis (thickening) of left ear drum, but no signs of active infection such as swelling, redness or fluid in the ear. Dr. Colgrove recommended a CT scan and follow up visit. Antibiotics were prescribed pending results from the CT scan. [Filing No. 87-1, at ECF p. 10].

On October 11, 2012, a CT scan of Mr. Carr's auditory canals and temporal bone was performed. The radiologist report stated the patient had a history of left ear hearing loss and temporal sclerosis (thickening of temporal bone surrounding the ear). The CT report stated that a portion of the patient's left mastoid bone adjacent to ear, was opacified and thickened consistent with chronic mastoiditis.[1] There was no evidence of current infection. The left ear drum did not appear thickened. The left middle ear appeared normal and the middle ear bones (ossicles) appeared normal. [Filing No. 83-39]. On October 9, 2012, Mr. Carr submitted a health care request form asking for definitions of serous otitis and tympanostomy. The response by health care staff was that he had an infection, and that is why he was placed on antibiotics. They also advised that he had a follow up with an ENT soon. [Filing No. 83-40]. On October 28, 2012, Mr. Carr submitted

---

[1] Mastoiditis is a bacterial infection of the mastoid bone. The mastoid bone, which sits behind the ear, consists of air spaces that help drain the middle ear. [Filing No. 83-36].

a request for health care form asking why he was prescribed the antibiotic, Augmentin. The response by health care staff stated he was given Augmentin for mastoiditis. [Filing No. 83-37].

On October 31, 2012, Mr. Carr was seen for a follow up appointment with the ENT specialist, Dr. Colgrove. Dr. Colgrove's final report stated that Mr. Carr was diagnosed with SNHL in his left ear. The report further reflected that, although Mr. Carr continued to complain of left ear pain, there was no sign of drainage, infection or any other abnormality in his left ear.

The ENT report reflected that Mr. Carr's middle ear was normal. The ENT report recommended that Mr. Carr be evaluated for a hearing aid and return in one year for follow up. No surgery or further treatment for Mr. Carr's left ear was recommended.

On October 31, 2012, Diane Kominsky submitted a request for consultation for a hearing aid for Mr. Carr's left ear based on the ENT report from Dr. Cosgrove recommending the patient be evaluated for a hearing aid for apparent SNHL in left ear. [Filing No. 83-45]. After reviewing the ENT report, audiology report and medical record, Dr. Mitcheff suggested the alternate treatment plan of onsite conservative treatment for evaluating Mr. Carr's hearing issues. As Mr. Carr reported perfect hearing in his right ear, Dr. Mitcheff determined that Mr. Carr did not demonstrate a medical necessity for a hearing aid. When Mr. Carr's requested an update regarding the status of a hearing aid, he was notified that a "hearing aid was denied due to great hearing in one ear." [Filing No. 83-46].

### Kidney Stones

On May 23, 2012, Mr. Carr went to sick call because he was having trouble urinating and experiencing severe abdominal pain. Nurse Hobson inquired why Mr. Carr was at sick call, and as Mr. Carr began to explain his symptoms, Nurse Hobson told him to leave and walked away. [Filing No. 87-1, at ECF p. 5]. On May 24, 2012, Mr. Carr was seen in the clinic for complaints of acute

onset of severe abdominal pain. [Filing No. 83-51]. He was immediately transferred by ambulance to the hospital emergency room. Mr. Carr was admitted and discharged from the Terre Haute Regional Hospital the same day with instructions to strain his urine for suspected kidney stones. X-Rays revealed a 1 mm non-obstructing stone in the right kidney and a 2 mm stone in Mr. Carr's ureter. [Filing No. 83-28]. The emergency room physician prescribed Flomax to help flush out his kidneys and Narco for pain relief. [Filing No. 83-20]. Dr. Leclerc prescribed Nalbuphine[2] for pain relief. [Filing No. 74-2, at ECF p. 115]. In his sworn declaration, Mr. Carr states he did not receive any pain medication for pain he experienced as a result of the kidney stones. [Filing No. 87-1, at ECF p. 7].

Mr. Carr was in severe pain. [Filing No. 83, at ECF pp. 6-7]. However, Dr. Leclerc determined that the pain medication Narco was not recommend nor necessary based on his assessment of Mr. Carr's need for pain relief. Mr. Carr submitted a request for health care on May 27, 2012, requesting the medication for his kidney stones. [Filing No. 83-21]. Health care staff indicated that the medication Flomax should arrive on Tuesday or Wednesday. [Filing No. 83-21]. On May 29, 2012, Mr. Carr submitted a health care request stating that he has been waiting on his medication since Thursday, his side and testicles hurt, and he was having trouble urinating. He also stated that his ear hurt and the Sudafed was done. Health care staff responded the Flomax was for five days only and the Sudafed was expired so he needed to sign up for NSC. [Filing No. 83-22]. Mr. Carr received his prescription for Flomax on May 29, 2012, five days after he was discharged from the hospital. [Filing No. 87-1, at ECF p. 7].

Seven days after he was discharged, on May 31, 2014, Mr. Carr was seen by Nurse Hobson and Nurse Wolfe complaining of pain in his the right groin area, possibly related to kidney stones.

---

[2] Nalbuphine is a pain reliever for the relief of moderate to severe pain. www.mayoclinic.org (last visited September 10, 2015).

There were no clinical indications of severe pain symptoms associated with kidney stones such as nausea, vomiting, fever, blood in the urine, or painful urination. Mr. Carr was instructed to continue taking Flomax and straining his urine to see if a kidney stone passed. Mr. Carr's vital signs were normal. [Filing No. 83-23]. Nurse Hobson and Nurse Wolfe berated Mr. Carr for visiting sick call and stated that "Wabash Valley does not treat pain or allow narcotic pain medicine in the Facility." [Filing No. 87-1, at ECF p. 7].

According to Dr. Mitcheff, the treatment Mr. Carr received for his medical conditions while incarcerated was appropriate and within the standard of care. When Mr. Carr was diagnosed with MRSA, Dr. Leclerc appropriately prescribed antibiotic treatment and eradicated the infection. Similarly, according to Dr. Leclerc. Mr. Carr's complaints of ear pain were treated promptly and appropriately with antibiotics, decongestants and antihistamines. There is no evidence that any hearing loss suffered by Mr. Carr was the result of treatment.

Mr. Carr contends that the medical staff at Wabash Valley ignored his repeated complaints of ear pain which ultimately resulted in deafness in his left ear. Mr. Carr also contends that he was in severe pain as a result of kidney stones and had to wait approximately five days before receiving the prescription Flomax. Mr. Carr contends that despite being in severe pain from the kidney stones, Dr. Leclerc did not provide him any pain medication.

### III. Discussion

Mr. Carr claims that the defendants were deliberately indifferent to his serious medical needs and denied him medical care. To support a claim that there has been a violation of this right, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison official to that condition. *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). For purposes of summary judgment, the defendants do not dispute that Mr. Carr has an objectively serious medical condition. As to the second element, "[t]o show deliberate indifference, [Carr] must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009). This requirement is satisfied when a prison official "fail[s] to act despite his knowledge of a substantial risk of serious harm" to a prisoner. *Farmer v. Brennan,* 511 U.S. 825, 841 (1994).

A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). Adequate medical care may involve care that the prisoner disagrees with; this disagreement alone is insufficient to establish an Eighth Amendment violation. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); To establish deliberate indifference, the prisoner must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *Id.* (quoting *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir. 2005)); or, stated another way, that the treatment decision "represents so significant a departure from accepted professional standards or practices that it calls into question whether the [medical professional] was actually exercising his professional judgment," *id.* (citing *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) and *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008)); *Gayton,* 593 F.3d at 622–23.

*1. Claims against Dr. Mitcheff*

Mr. Carr alleges that Dr. Mitcheff was deliberately indifferent to his serious medical condition of ear infections when, on two occasions, he denied Dr. Leclerc's medical referral for Mr. Carr to be examined by an ENT. An examination of the record reveals that Mr. Carr was suffering from chronic painful ear infections for a period of several months in 2012. On two different occasions, Dr. Leclerc submitted a request for Mr. Carr to be seen by an ENT based on continued complaints of ear pain and muffled hearing. On the first occasion, Dr. Mitcheff denied the request for a referral and instead recommended that Mr. Carr be treated with antibiotics and a decongestant. On the second occasion, Dr. Leclerc submitted a request Mr. Carr be seen by an ENT based on continued complaints of ear pain and muffled hearing. Again, Dr. Mitcheff recommended an alternative treatment that Mr. Carr be treated with a 30-day course of Flonase. In between Dr. Leclerc's requests that Mr. Carr be seen by an ENT, Mr. Carr submitted no less than seven requests for health care forms complaining of ear pain. Mr. Carr did not see an ENT until September 12, 2012, almost five months after he first began complaining of severe ear pain. Further, Mr. Carr was prescribed pain medication for his ear only one time during this period.

The evidence most favorable to Mr. Carr shows that over a prolonged period of time he repeatedly complained of ear pain and muffled hearing, and the two ENT referrals recommended by his primary care physician were denied by Dr. Mitcheff. A delay in treatment that causes a prisoner to suffer needless pain is sufficient to survive summary judgment. *See Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (holding defendants not entitled to judgment as a matter of law where delay in treatment may have exacerbated prisoner's pain); *Gutierrez v. Peters,* 111 F.3d 1364, 1371 (7th Cir. 1997). A reasonable jury could certainly find the treatment rendered for Mr. Carr's ear pain meets the foregoing standard. He has presented evidence he suffered from severe

pain for several months and received essentially nonexistent treatment despite referrals by the treating physician during that time period. Dr. Mitcheff's motion for summary judgment must be **denied** as it relates to Mr. Carr's complaints of ear infections and the associated pain.

Mr. Carr also alleges that Dr. Mitcheff was deliberately indifferent to his medical need of hearing loss when he denied the ENT's recommendation that Mr. Carr be evaluated for a hearing aid in his left ear citing the reason: the hearing in his right ear is fine. Again, reviewing the record most favorably to Mr. Carr, the ENT recommended that Mr. Carr be evaluated for a hearing aid. Diane Kominsky submitted a request for consultation for a hearing aid based on the ENT's report. Dr. Mitcheff determined that Mr. Carr did not demonstrate a medical necessity for a hearing aid because he had perfect hearing in his right ear.

It is the District Court's role to determine whether expert testimony will be considered by the Court. *Rowe v. Gibson*, 2015 WL 4934970 (7th Cir. August 19, 2015). Here, Dr. Mitcheff has simply made a conclusory statement that having "fine" hearing in one ear is the standard of care to deny a hearing aid in the non-hearing ear. If this were the standard of care, individuals would not wear single hearing aids, and people would only be provided hearing aids as a result of hearing loss in both ears. Dr. Mitcheff cites no medical evidence to support the notion that humans are endowed with a bonus ear, and he is not an ENT. As the gatekeeper of expert testimony, the Court may reject his opinion as insufficient to remove any issue of fact. Here the Court does so.

Moreover, the Court finds denial of summary judgment on this issue is also proper because this case fits within the exception allowing a case to proceed under circumstances where a lay person may be aware of the need for the requested treatment. *See, Pyles v. Fahim,* 771 F.3d 403, 411 (7th Cir. 2014.)

The Eleventh Circuit recently reviewed a claim of deliberate indifference by an inmate against jail officials that refused to provide an inmate batteries for his hearing aids. *See Gilmore v. Hodges*, 738 F.3d 266 (11th Cir. 2013). That Court concluded the "ability to hear is a basic human need materially affecting daily activity and a substantial hearing impairment plainly required medical treatment by a physician." *Id.* at 275. Indeed, Mr. Carr was diagnosed with profound hearing loss, for which the ENT recommended he be evaluated for a hearing aid. Whether Mr. Carr's hearing loss amounted to a serious medical condition that should be treated with a hearing aid is a factual issue in dispute. Dr. Mitcheff's motion for summary judgment must be **denied** as it relates to Mr. Carr's hearing loss and the denial of an evaluation for a hearing aid.

*2. Claims against Dr. Leclerc*

Mr. Carr alleges that Dr. Leclerc was deliberately indifferent to Mr. Carr's complaints of a throat infection that Mr. Carr alleges spread to and caused damage to his left ear. The evidence most favorable to Mr. Carr shows that Dr. Leclerc provided treatment to Mr. Carr for MRSA beginning in April of 2012 with the antibiotic Bactrim. Later in April, Mr. Carr again had a positive test result for MRSA. He was given the antibiotic Augmentin which Dr. Leclerc states successfully treated the infection.[3] After repeated complaints by Mr. Carr of ear pain, Dr. Leclerc made two separate referrals that Mr. Carr be seen by an ENT. Dr. Mitcheff recommended an alternative treatment plan each time and Dr. Leclerc did not appeal Dr. Mitcheff's recommendations. The record reflects the fact that Dr. Leclerc had the ability to appeal Dr. Mitcheff's alternative recommendation, but did not. [Filing No. 74-1, at ECF p. 7]. This likely resulted in a delay in

---

[3] It is not clear from the record provided by the defendants if the antibiotic Augmentin was in fact given to Mr. Carr for treatment of MRSA. The records provided by Mr. Carr reflect that the Augmentin was given to Mr. Carr for treatment of his ear infection. [Filing No. 83-27]. The Court will not hunt through the record to determine when and what treatment was given to Mr. Carr to treat the MRSA.

treatment, and during that delay, Mr. Carr submitted multiple health care request forms stating he was experiencing severe pain and muffled hearing in his ear. A delay in treatment that causes a prisoner to suffer needless pain is sufficient to survive summary judgment. *Liefer*, 491 F.3d at 716. Dr. Leclerc's motion for summary judgment must be **denied** as it relates to Mr. Carr's complaints of throat pain possibly leading to an ear infection and the associated pain.

Mr. Carr also alleges that Dr. Leclerc was deliberately indifferent to the pain he experienced as a result of kidney stones. The evidence most favorable to Mr. Carr shows that Mr. Carr began experiencing severe abdominal pain and was transported to the Terre Haute Regional Hospital emergency room. X-rays revealed a 1 mm non-obstructing stone in the right kidney and a 2 mm stone in Mr. Carr's ureter. The emergency room physician prescribed Flomax to help flush out the kidneys and Norco for pain relief. Mr. Carr did not receive the prescription for Flomax for approximately five days.

Dr. Leclerc determined that Norco was not recommended nor necessary for a variety of reasons including facility security, and states in his sworn affidavit that he prescribed the pain medication Nalbuphine [Filing No. 74-1, at ECF p. 8; Filing No. 74-2, at ECF p. 115].[4] Mr. Carr states in his sworn declaration that he did not receive any pain medication. [Filing No. 87-1, at ECF pp. 7-8].

Where prison medical staff just refuse to treat serious pain or disease, a prisoner may well have a viable claim that should go to trial. *Miller v. Campanella*, 794 F.3d 878 (7th Cir. 2015) (no treatment of prisoner's GERD); *Hayes v. Snyder*, 546 F.3d 516, 524–26 (7th Cir. 2014). Where the evidence shows, however, that medical staff have provided at least some treatment for pain the

---

[4] Interestingly, Dr. Leclerc prescribed Mr. Carr Vicodin for ear pain two weeks later. [Filing No. 74-1, at ECF p. 10]. This fact raises additional issues about the failure to prescribe pain medication for the kidney stones.

Seventh Circuit holds that the prisoner is not entitled to a jury trial on a claim for deliberate indifference based on a claim that the pain treatment was not adequate. *Pyles*, 771 F.3d at 409, 411; *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073–76 (7th Cir. 2012).

Here, Mr. Carr's declaration that he did not receive any pain medication for the pain associated with the kidney stones is enough to create a genuine issue of fact. In deciding a motion for summary judgment, this Court cannot evaluate credibility, weigh evidence, or decide which inference to draw from the facts. *Payne v. Pauley*, 337 F. 3d 767, 770 (7th Cir. 2003). This is for a trier of fact to do. *Id.* Because the parties disagree as to whether Mr. Carr was prescribed pain medication for pain resulting from kidney stones, there is a dispute of fact and summary judgment is not appropriate. Dr. Leclerc's motion for summary is **denied** as to Mr. Carr's claim he was denied pain medication for kidney stones.

### 3. Claims against Nurse Hobson and Nurse Wolfe

Mr. Carr alleges that Nurse Hobson refused treatment ordered by a doctor, intimidated him from seeking medical treatment and ignored his complaints that he was suffering from pain as a result of the kidney stones. The evidence most favorable to Mr. Carr shows that Nurse Hobson refused to perform a throat culture after Mr. Carr complained of a burning sensation in his throat, and instructed him not to sign up for any more sick calls. The evidence further shows that Nurse Hobson did not spend sufficient time with Mr. Carr to determine if his complaint of abdominal pain was real or not. Deliberately ignoring a request for medical assistance has long been held to be a form of cruel and unusual punishment. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Mr. Carr's sworn testimony supports such a claim with respect to his kidney stones when he first appeared in the clinic complaint of abdominal pain.

Finally, the evidence shows that when Mr. Carr complained of abdominal pain after being diagnosed with kidney stones, Nurse Hobson and Nurse Wolfe stated that Wabash Valley does not treat pain. As noted, that statement is belied by Mr. Carr's medical records for his ear pain.

Nurse Hobson and Nurse Wolfe's motion for summary judgment must be denied as it relates to Mr. Carr's kidney stones. Medical staff's refusal to treat serious pain that causes a prisoner to suffer needless pain is sufficient to survive summary judgment. *Williams,* 491 F.3d at 716. Nurse Hobson and Nurse Wofle's motion for summary judgment as it relates to Mr. Carr's kidney stones is **denied**.

### IV. Conclusion

The defendants' motion for summary [Filing No. 73] is **denied**.

Dr. Mitcheff's motion for summary judgment as it relates to Mr. Carr's ear pain and hearing aids is **denied**. His Eighth Amendment claim that Dr. Mitcheff was deliberately indifferent to a serious medical need and denied him medical care will proceed to trial.

Dr. Leclerc's motion for summary judgment as it relates to Mr. Carr's ear pain and pain resulting from kidney stones is **denied**. His Eighth Amendment claim that Dr. Leclerc was deliberately indifferent to a serious medical need and denied him medical care will proceed to trial.

Nurse Hobson's motion for summary judgment as it relates to her ignoring his complaints of abdominal pain and for treatment of pain resulting from kidney stones is **denied**. His Eighth Amendment claim that Nurse Hobson was deliberately indifferent to a serious medical need and denial of treatment will proceed to trial.

Nurse Wolfe's motion for summary judgment as it relates to her treatment of Mr. Carr's pain after being diagnosed with kidney stones is **denied.** His Eighth Amendment claim that Nurse Wolfe was deliberately indifferent to a serious medical need will proceed to trial

**IT IS SO ORDERED.**

Dated: September 14, 2015

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

David H. Carr, # 177630
Indiana State Prison
Inmate Mail/Parcels
One Park Row
Michigan City, Indiana 46360

Electronically registered counsel